# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8226 | **DATE** | 9/11/2003 |
| **CASE TITLE** | JOSEPH SAMAS vs. ANTHEM HEALTH & LIFE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Judgment is entered in favor of defendant, Anthem Health & Life Insurance Company, and against the plaintiff, Joseph Samas, on plaintiff's complaint. All pending dates and motions are dismissed as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| LG | courtroom deputy's initials |

date docketed: SEP 15 2003

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH SAMAS, | ) |
| | ) Case No. 01 C 8226 |
| Plaintiff, | ) |
| | ) Hon. John W. Darrah |
| v. | ) |
| | ) |
| ANTHEM HEALTH & LIFE | ) |
| INSURANCE COMPANY a/k/a ALTA | ) |
| HEALTH & LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joseph Samas ("Plaintiff"), originally filed a complaint against Defendant, Anthem Health and Life Insurance Company also known as Alta Health and Life Insurance Company ("Defendant"), in the Circuit Court of Cook County, Illinois, seeking recovery of premium payments for certain life insurance coverage. Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441(a) and 29 U.S.C. § 1132(a)(1)(B) on the ground that Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

There was a trial by the Court without a jury on the issues; testimony from several witnesses was heard in a single day.

For the reasons discussed below, judgment is entered in favor of the Defendant and against the Plaintiff.



DOCKETED
SEP 1 5 2003



Pursuant to Federal Rule of Civil Procedure 52, the Court hereby enters the following written Findings of Fact and Conclusions of Law which are based upon consideration of all the admissible evidence as well as this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent that matters expressed as Conclusions of Law may be considered Findings of Fact, they shall also be deemed Findings of Fact.

## FINDINGS OF FACT

Plaintiff is a fifty-nine year-old man who resides in Oak Forest, Illinois. Plaintiff was employed by Barton, Inc. ("Barton") from May 1987 until his termination on January 30, 1996, as a General Account Manager.

Barton is a liquor manufacturer, importer and bottler. Barton provided to its eligible employees various employee welfare benefits, including life insurance, under its employee welfare benefit plan ("Barton Plan"). The Barton Plan was established through the purchase of group health and life insurance issued by Anthem Health and Life Insurance Company ("Anthem") under Group Policy Number 39205. Defendant is the successor-in-interest to Anthem. During 1998, Great West Life Insurance Company purchased Anthem's life insurance business and continued to do business as Defendant.

Barton paid the premiums for group health and life benefits provided under the Barton Plan for all full-time active employees. The policy provided for a waiver of premium benefit "[i]f You become Totally Disabled while You are covered under this Group Policy, the Waiver of Premium

benefit may apply to You. If You qualify for the Waiver of Premium benefit, your Life Insurance will be continued without payment of premiums for as long as You continue to qualify." (Def.'s Ex. B.) The policy provided:

> To first qualify for the Waiver of Premium benefit, You, or someone on your behalf, must give written proof satisfactory to the Company that You are Totally Disabled. The proof must also show that your Total Disability: (1) began before your 60th birthday; and (2) has continued for at least 9 Months. The Company must receive this proof at its Home Office between the 9th and 12th Month after the date You stop being Actively at Work. If the Company does not receive the proof before the end of the 12th Month, your Insurance will not be continued. If You qualify, your Life Insurance is continued without payment of premiums for 12 Months from the date proof is received.
>
> To continue to qualify for the Waiver of Premium benefit for additional 12 Month periods, You, or someone on your behalf, must give written proof satisfactory to the Company that shows You continue to be Totally Disabled. The Company must receive this proof at its Home Office between the 9th and 12th Month of each successive 12 Month period. If the Company does not receive the proof before the end of the 12th Month, your Insurance will not be continued.

(Def.'s Ex. B.) The policy defines "Totally Disabled" as "due to Sickness or Injury an Insured Person is: (1) under a Physician's care; and (2) completely and continuously unable to engage in any occupation or business for an income or profit." (Def.'s Ex. B.) "Actively at Work" means "performing every duty of your job, in the Employer's usual place of business." (Def.'s Ex. B.)

The policy also provided eligible employees with the right to convert life insurance benefits provided under the Barton Plan to an individual conversion policy. Under the policy, an eligible employee had to apply for an individual conversion policy. The policy provided that:

> [i]f all, or any part, of your Life Insurance terminates while this Group Policy is in force because: (a) You are no longer employed; or (b) You are transferred to a class of Employees that is not insured for Life Insurance by this Group Policy; or (c) your Waiver of Premium benefit terminates; or (d) the amount of your Life Insurance is reduced as otherwise provided in this Group Policy; then You may convert any amount of this terminated Insurance to an individual policy.

-3-

(Def.'s Ex. B.) The policy also provided that:

> [t]o get an individual conversion policy, You must apply for it. You must apply using the proper forms. You may get these forms by asking the Policyholder or the Company. The completed forms and the first premium must be received by the Company at its Home Office within 31 days after your Life Insurance terminates. You cannot get this policy by applying later. The Company will not ask any questions about your health. If an individual policy is issued, it will take effect at the end of the 31 day conversion period. The premium for your policy will be based on your age as of your nearest birthday on the conversion policy's effective date and the amount You convert.

(Def.'s Ex. B.)

The policy also provided that insurance automatically terminates on the earliest of:

> 1. the date this Group Policy terminates; or
> 2. the last day for which your premium has been paid; or
> 3. the date You enter into full-time military, naval, or air service; or
> 4. the date You are no longer in an eligible class; or
> 5. the date You are no longer Actively at Work with the Employer, except that if You are no longer Actively at Work [due to temporary six-month lay-off, authorized six-month leave of absence, sickness or injury for three months], the Policyholder may continue your Insurance by making the premium payments for th[at] period of time
> . . . .

(Def.'s Ex. B.)

Since 1992, Plaintiff has been under the care of Dr. Mark Lerman, a board-certified psychiatrist, for chronic depression with symptoms of post-traumatic stress disorder ("PTSD"), including nausea, dizziness, crying, nightmares, flashbacks, sweating, and insomnia. Since 1992, Plaintiff's mental condition has worsened and; on January 30, 1996, Plaintiff stopped going to work at Barton.

In a letter dated April 9, 1997, Anne Shaver, a Human Resources specialist for Barton, sent Plaintiff two forms entitled "Attending Physician's Statement of Disability" ("Physician's Statement") and "Claimant's Statement of Proof of Total and Permanent Disability" ("Claimant's

-4-

Statement") for a waiver of premium application. The letter directed Plaintiff to mail both forms to Defendant by April 23, 1997. Both of these forms were received by Defendant on May 13, 1997. An "Employer's Statement" dated April 9, 1997, and sent to Anthem in support of Plaintiff's waiver of premium application stated that the last premium had been paid in January 1997.

The Claimant's Statement identified Dr. Mark Lerman as one of Plaintiff's treating physicians. The Claimant's Statement stated that Plaintiff did not know when he expected to return to any occupation, a disability claim was pending before the Social Security Administration, and Plaintiff spent his time doing "house repair and remodeling." (Def.'s Ex. A.) The Physician's Statement, completed by Dr. Lerman, indicated that Dr. Lerman had diagnosed Plaintiff with major depression. In response to the question "When can this insured return to any type of occupation for wage or profit?", Dr. Lerman stated, "He can work now in a low stress, non-demanding position; he cannot function in the competitive setting he once worked in." (Def.'s Ex. A.) Both the Claimant's Statement and the Physician's Statement indicated that Plaintiff last worked at Barton on January 30, 1996.

After verifying that Plaintiff's last day of work was January 30, 1996, Defendant sent Barton a letter dated October 20, 1997, informing the Human Resources Department that the claim for waiver of premium benefit had been denied because the group policy was not effective until February 1, 1996, after Plaintiff ceased to work for Barton. The October 20, 1997 letter stated that Human Resources or Plaintiff could appeal the denial in writing within sixty days of receipt of that letter and that they could submit additional information.

In a letter dated March 9, 1998, Defendant stated that it agreed to waive the "actively at work" condition and that, therefore, Plaintiff was covered for life insurance effective February 1, 1996. However, the March 9, 1998 letter stated that, after another review of Plaintiff's claim, Defendant determined that Plaintiff did not qualify for the waiver of premium benefit because he was not "totally disabled" under the policy. The letter stated:

> To qualify, you must be totally disabled, which is defined as being "completely and continuously unable to engage in any occupation or business for an income or profit." (We administer "any occupation" as any occupation for which you are reasonably fitted by reason of training, education, or experience.) Dr. Lerman indicated in his statement of April 29, 1997, that you were unable to return to your previous job, but could work in a "low stress, non-demanding position." On this basis, we cannot approve your claim for waiver of premium and so your group life insurance benefit is ending at this time.

(Def.'s Ex. A.) The March 9, 1998 letter further advised Plaintiff of the procedures to appeal the denial, his right to convert from group coverage to an individual whole life policy within thirty-one days, and that he could submit any information that may have a bearing on Defendant's decision.

Plaintiff did not apply to convert to an individual policy, and an individual policy was not issued to him. In a letter dated May 7, 1998, Plaintiff's wife requested an appeal of Defendant's decision that Plaintiff did not qualify for the waiver of premium benefit. In a letter dated May 19, 1998, Defendant acknowledged receipt of Mrs. Samas' appeal and reiterated its position that Plaintiff was not totally disabled because Dr. Lerman opined that Plaintiff could work in a low-stress, non-demanding position. The May 19, 1998 letter advised Plaintiff that Defendant would reconsider its position if Dr. Lerman provided further information "indicating the opinion he previously gave was not correct, and elaborating on the progress of your condition and treatment over the past year . . . ." (Def.'s Ex. A.)

In a letter dated June 16, 1998, Dr. Lerman informed Defendant that Plaintiff "is completely disabled from working in his primary occupation, accounting. He is able to perform work-related tasks that are free of demands or stress, however, but not of the complexity required for accounting." (Def.'s Ex. A.) Dr. Lerman's June 16, 1998 letter did not state that he had changed his mind about his conclusion regarding Plaintiff's ability to work and did not elaborate on the progress of Plaintiff's condition and treatment over the past year.

In a letter dated July 2, 1998, that was sent to Dr. Lerman, Defendant indicated that it had concluded from the Physician's Statement that Plaintiff "was capable of working, but not at a job with the stress level he previously had as an accounting manager" and could work "in his vocation or in something similar, but not at the level of a manager." (Def.'s Ex. A.) The July 2, 1998 letter also inquired what Dr. Lerman had in mind when he completed the Physician's Statement. Specifically, the July 2, 1998 letter asked, "Did you feel that there were jobs for which he was reasonably fitted that he was capable of performing? If so, what types of jobs? Did [Plaintiff] and you discuss his searching for suitable employment." (Def.'s Ex. A.)

In response to Defendant's request for information, Dr. Lerman stated in a letter dated July 21, 1998, "It is unlikely that [Plaintiff] could function successfully in accounting with the inherent demands for accuracy and full concentration. Regarding his activities looking for work, please address these concerns with [Plaintiff], as this is out of the scope of my involvement." (Def.'s Ex. A.)

Defendant sent Plaintiff a letter on July 27, 1998, in which it acknowledged receipt of Dr. Lerman's response and that Plaintiff had applied for Social Security Disability benefits. The July 27, 1998 letter requested information regarding the status of Plaintiff's Social Security claim and a copy of the award letter if Plaintiff had been approved for Social Security Disability benefits.

On August 13, 1998, Plaintiff telephoned Defendant regarding the status of his claim. During that conversation, Plaintiff was told that his claim was in appeal/denial status. Defendant's representative indicated that Plaintiff's file would be reviewed and that he would be sent a letter informing him what was needed. Plaintiff stated that his medical condition had not changed and that he was seeing a physician regularly.

Defendant informed Plaintiff by letter on August 31, 1999, that:

> [pu]rsuant to your recent telephone call we have completed a review of your file and find we have received insufficient information to complete our review of your appeal.
>
> We previously determined that you were ineligible for the Waiver of Premium benefit as you did not meet the definition of Total Disability as stated in your plan. To qualify for this benefit, you must be 1) under a Physician's care; and 2) completely and continuously unable to engage in any occupation or business for income or profit. Your physician has previously reported that you are able to perform a low stress non-demanding position. We require medical evidence that you are unable to engage in any occupation or business.
>
> To consider your appeal, we require the following information:
> 1. Copies of your medical records from your date last worked through the present supporting that you have been under a physician's care and continuously totally disabled from any occupation or business.
> 2. Completion of the enclosed Work History form documenting all positions held since completing your formal education.
> 3. Completion of the enclosed Activities of Daily Living form confirming your current daily activities.
> 4. Copies of your Federal Income Tax Returns for tax years 1996, 1997 and 1998 confirming that you are not engaged in an occupation or business.

(Def.'s Ex. A.) Plaintiff sent Defendant completed copies of the Work History and Daily Living forms, as well as copies of the front pages of the requested tax returns. Plaintiff did not send any additional medical records, indicating that Defendant already had copies of his medical records.

Defendant requested: (1) Plaintiff's medical records, including office narratives and a treating source summary supporting his inability to work in any occupation or business; (2) the second page of Plaintiff's federal tax returns for 1996, 1997, and 1998; and (3) copies of any W-2 forms. Defendant received Dr. Lerman's office narratives on January 31, 2000.

In a letter dated March 14, 2000, Defendant asked Dr. Lerman to provide the following information: (1) a DSM-IV[1] Multiaxial Evaluation, (2) a description of Plaintiff's current symptoms, (3) the dosage and frequency of Plaintiff's medications, (4) a Mental Status Exam or thorough description of cognitive function, and (5) an opinion of why or why not Plaintiff could or could not likely work. Pursuant to Defendant's request, Plaintiff authorized Defendant to obtain such information from Dr. Lerman.

Dr. Lerman responded in a letter to Defendant dated March 23, 2000, that Plaintiff "does not have the ability to tolerate stressful, demanding tasks such as accounting. He could work, part time, in a non-demanding, low stress occupation." (Def.'s Ex. A.) Dr. Lerman never stated that he had changed his mind about Plaintiff's ability to work as stated in the Physician's Statement. A

---

[1] DSM-IV stands for the Diagnostic and Statistical Manual of Mental Disorders – Fourth Edition. The DSM-IV, published by the American Psychiatric Association, is the main diagnostic reference of mental health professionals in the United States and lists the diagnostic criteria for the most common mental disorders.

rehabilitation specialist reviewed the medical information supplied to Defendant. Based on the medical records provided, Dr. Lerman's opinions regarding Plaintiff's condition, and Defendant's previous review, the rehabilitation specialist concluded that Plaintiff was "described as retaining work-related capacities for low level semi-skilled work with less interpersonal contact."

Defendant sent Plaintiff a letter dated November 1, 2000, advising him that it had determined that he was not totally and continuously disabled from all occupations as required under the policy. The November 1, 2000 letter stated:

> The information we have received and reviewed with the assistance of our Medical Staff and Vocational Specialist indicates that you are not totally disabled from any occupation. Dr. Mark Lehrman [sic] . . . indicates in a letter dated March 23, 2000, that you "could work, part-time, in a non-demanding, low stress occupation." Taking the definition of disability into account, based on our review of the medical information provided, the Waiver of Premium Disability Benefit will not be available.

(Def.'s Ex. A.) The November 1, 2000 letter also advised Plaintiff of the procedures to appeal its decision, his right to convert his group life insurance to an individual life insurance policy, and that he could submit additional information.

Although Plaintiff was awarded disability insurance from the Social Security Administration on May 23, 1998, the award letter was not part of the administrative record.

## CONCLUSIONS OF LAW

*Defendant's Motion for Judgment of Partial Findings*

Defendant moved, pursuant to Rule 52(c), for judgment in its favor on Counts I and II, arguing that Counts I and II are preempted by ERISA. On March 12, 2003, Counts I and II were dismissed without objection. Therefore, Defendant's Motion for Judgment of Partial Findings Pursuant to Federal Rule of Civil Procedure 52(c) is denied as moot.

*Defendant's Motion for Judgment as to Count III*

Defendant moves for judgment as to Count III of the amended complaint, arguing that it is not a proper Defendant.

Under ERISA, suits to recover benefits may be brought only against the plan as an entity. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). Suits to recover benefits may also be brought against the plan administrator. *Mein v. Carus Corp.*, 241 F.3d 581, 583 (7th Cir. 2001). Under ERISA, the plan "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated" or "the plan sponsor". 29 U.S.C. § 1002(16)(A)(i), (ii).

The policy defines the "Company" as the Defendant. The policy designates the "Policyholder" as Barton, Plaintiff's employer. Throughout the policy, the "Company" is denoted as the party who determines: employees' eligibility for different benefits, waivers, conversions; the validity of assignments of life insurance; and whether claims for benefits will be paid. The policy required employees' claims for waivers or benefits and changes in their status to be sent to the "Company" at its "Home Office". Defendant sent Plaintiff letters on its stationery (which were attached to the amended complaint), denying his claim for the Waiver of Premium benefit. These provisions are sufficient to show a close relationship between Defendant and the plan. *Mein*, 241 F.3d at 585. Defendant is the "plan administrator" and, thus, a proper defendant under ERISA. *Mein*, 241 F.3d at 583, 585 (noting that an employer was a proper defendant under ERISA where the plan and the employer were closely intertwined, the employer was the designated agent for legal process, and an employee of the employer signed letters as the trustee of the plan). Therefore, Defendant's Motion for Judgment as to Count III on this basis is denied.

-11-

*Motion in Limine*

Defendant filed a motion in limine to exclude evidence not contained in the administrative record it maintained.

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "Where the administrator has made no factual determination in denying plan benefits the district court should apply a *de novo* standard of review and arrive at its own factual findings in determining whether benefits were properly denied." *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994). Under the *de novo* standard of review, "the district court need not limit the evidence which the district court may consider to that which was before the plan administrator." *Casey*, 32 F.3d at 1099 n.4.

However, if the benefit plan grants discretionary authority to the plan administrator, the denial of benefits is reviewed only for unreasonableness, that is, whether the plan administrator's decision was arbitrary and capricious. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). "[T]he plan should clearly and unequivocally state that it grants discretionary authority to the administrator . . . ." *Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 626 (7th Cir. 2002). "Deferential review of an administrative decision means review on the administrative record." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F3d 975, 981 (7th Cir. 1999).

The policy states, "To first qualify for the Waiver of Premium benefit, You, or someone on your behalf, must give written proof *satisfactory to the Company* that You are Totally Disabled." (Pl.'s Trial Ex. 1) (emphasis added). The language of the policy, "satisfactory to the Company", establishes a subjective standard of proof for determining eligibility for the Waiver of Premium benefit. The plan clearly and unequivocally states that it grants discretionary authority to the plan administrator to determine eligibility for the Waiver of Premium benefit. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (noting that language in a policy that conditioned entitlement to benefits on submission of proof satisfactory to the plan administrator "signaled the subjective, discretionary character of the judgment that was to be made"). Thus, the denial of the Waiver of Premium benefit is reviewed for unreasonableness, and this review is limited solely to the administrative record. *Hackett*, 315 F.3d at 773. Therefore, Defendant's Motion in Limine to Exclude Evidence Not Contained in the Administrative Record Maintained by Defendant is granted; and the evidence before the Court is limited to the Administrative Record.

*Defendant's Denial of the Waiver of Premium Benefit Was Not Arbitrary and Capricious*

This matter arises under ERISA and constitutes a claim for employee welfare benefits under 29 U.S.C. § 1132(a)(1)(B). ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1)(A). "An employer establishes or maintains a plan if it enters into a contract with the insurer and pays its employees' premiums." *Postma v. Paul Revere Life Ins. Co.*,

223 F.3d 533, 537 (7th Cir. 2000). Thus, Barton's contract with Defendant for group insurance coverage for its employees constitutes an ERISA plan.

The civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), provide the exclusive remedy for an action for recovery of benefits under ERISA plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Section 1132 states, in pertinent part: "A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). In order to prove a denial of benefits under § 1132(a)(1)(B), Plaintiff must show that, despite the fact that he satisfied the conditions necessary for benefits under the plan, Defendant failed to abide by the terms of the plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir. 1992).

Entitlement to the Waiver of Premium benefit under the plan was conditioned on "You, or someone on your behalf, must give written proof *satisfactory to the Company* that You are Totally Disabled." As discussed above, the policy defines "Totally Disabled" as "due to Sickness or Injury an Insured Person is: (1) under a Physician's care; and (2) completely and continuously unable to engage in any occupation or business for an income or profit."

Based on Dr. Lerman's written statements and the other documents in the administrative record and the findings of fact stated above, the Court concludes that Defendant's decision that Plaintiff was not eligible for the Waiver of Premium benefit was not arbitrary and capricious. Defendant denied Plaintiff the Waiver of Premium benefit because the proofs submitted by Plaintiff did not prove that Plaintiff was "completely and continuously unable to engage in any occupation or business for an income or profit" and, therefore, "Totally Disabled". Dr. Lerman, Plaintiff's

-14-

treating physician, opined on the following occasions that Plaintiff could work in a low-stress, non-demanding position: (1) the Physician's Statement ("He can work now in a low stress, non-demanding position . . . ."); (2) the June 16, 1998 letter ("[Plaintiff] is able to perform work-related tasks that are free of demands or stress, however, but not of the complexity required for accounting."); (3) the March 23, 2000 letter ("[Plaintiff] could work, part time, in a non-demanding, low stress occupation"). Defendant's determination that Plaintiff was not "Totally Disabled" as defined in the policy was not unreasonable where Plaintiff's own treating physician stated that Plaintiff would be able to work in some type of low-stress job. Thus, Plaintiff has failed to show by a preponderance of the evidence that Plaintiff was eligible for the Waiver of Premium benefit. The denial of the Waiver of Premium benefit by Defendant was not in violation of the policy provisions.

It is therefore ordered that judgment be entered in favor of Defendant, Anthem Health & Life Insurance Company, and against the Plaintiff, Joseph Samas, on Plaintiff's Complaint.

John W. Darrah, Judge
United States District Court

Date: September 11, 2003